# Michael Faillace & Associates, P.C.

Employment and Litigation Attorneys

60 East 42nd Street, Suite 4510                                              Telephone: (212) 317-1200
New York, New York 10165                                                    Facsimile: (212) 317-1620

————

michael@faillacelaw.com

April 21, 2020

**BY ECF**
Hon. Mary Kay Vyskocil
United States District Judge
United States District Court
500 Pearl Street
New York, NY 10007

Re:    Rivas et al v. Felidia Restaurant, Inc. et al
       Index No. 19-CV-9218 (LGS)

Dear Judge Vyskocil:

This office represents plaintiffs ("Plaintiffs") in the above referenced matter. Plaintiffs write to submit this letter setting forth their views on why the agreed upon settlement in this matter is fair.

The parties have agreed to a negotiated settlement ("Agreement") after extensive settlement discussions. A copy of the proposed Agreement is attached hereto as "Exhibit A." We therefore ask the Court to approve the settlement, pursuant to _Cheeks v. Freeport Pancake House, Inc._, 796 F.3d 199 (2d Cir. 2015) and dismiss the case with prejudice.

## 1. **Background**

Plaintiffs filed this Complaint against Defendants alleging claims for unpaid overtime wages, liquidated damages, interest, attorneys' fees, and costs pursuant to the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 _et seq._ (FLSA), the New York Minimum Wage Act, N.Y. Lab. Law § 650 _et seq._, and the annual notice and wage statement requirements of the New York Labor Law (N.Y. Lab. Law. § 195).

Plaintiff Rivas was employed by Defendants from approximately September 2017 until on or about June 21, 2019, as a Head waiter and bartender. Although Plaintiff Rivas ostensibly was employed as Head waiter and bartender, he contends that he spent over 20% of each day performing non-tipped work throughout his employment with Defendants. From approximately August 21, 2018 until on or about May 2019, Plaintiff Rivas alleges he worked approximately 61 to 66 hours per week. From approximately May 2019 until on or about June 21, 2019, Plaintiff Rivas alleges he worked approximately 52 to 54 hours per week. From approximately August 21,

2018 until on or about December 2018, Defendants paid Plaintiff Rivas a cash wage of $8.65 per hour and took a $4.35 tip credit. From approximately January 2019 until on or about June 21, 2019, Defendants paid Plaintiff Rivas $10.00 per hour and took a $5.00 tip credit. Plaintiff Rivas claims hiss pay did not vary even when he was required to stay later or work a longer day than his usual schedule.

Plaintiff Melendez was employed by Defendants from approximately January 2019 until on or about March 10, 2019. Defendants ostensibly employed Plaintiff Melendez as a busboy. Although Plaintiff Melendez ostensibly was employed as a busboy, he claims he spent over 20% of each day performing non-tipped work throughout his employment with Defendants. From approximately January 2019 until on or about March 10, 2019, 2 weeks of each respective month, Plaintiff Melendez alleges he worked approximately 48 hours per week. From approximately January 2019 until on or about March 10, 2019, 2 weeks of each respective month, Plaintiff Melendez claims he worked approximately 56.25 hours per week. From approximately January 2019 until on or about March 10, 2019, Defendants paid Plaintiff Melendez a cash wage of $10.00 per hour and took a $5.00 tip credit. Plaintiff Melendez alleged his pay did not vary even when he was required to stay later or work a longer day than his usual schedule.

Plaintiff Munson was employed by Defendants from approximately October 2017 until on or about November 2018. Plaintiff Munson's relevant claim period is from August 21, 2018 until on or about November 2018. Throughout Plaintiff Munson's employment, Defendants ostensibly employed Plaintiff Munson as a head bartender. Although Plaintiff Munson ostensibly was employed as a head bartender, she claims she spent over 20% of each day performing non-tipped work throughout her employment with Defendants. From approximately August 21, 2018 until on or about November 2018, Plaintiff Munson claims she worked approximately 44 to 55 hours per week. From approximately August 21, 2018 until on or about November 2018, Defendants paid Plaintiff Munson a cash wage of $8.65 and took a $4.35 tip credit. Plaintiff Munson claims her pay did not vary even when she was required to stay later or work a longer day than her usual schedule.

Defendants categorically deny the allegations in the Complaint and assert that they have documentary proof to rebut the allegations set forth by Plaintiffs in the Complaint..

2. **Settlement Terms**

Plaintiff Rivas alleges he was entitled to back wages of approximately $19,344.28. Plaintiff Rivas estimates that if he had recovered in full for his claims, he would be entitled to approximately $59,770.92 which represents calculated actual damages, penalties, and interest, but excludes attorneys' fees and costs. Plaintiff Melendez alleges he was entitled to back wages of approximately $3,112.50. Plaintiff Melendez estimates that if he had recovered in full for his claims, he would be entitled to approximately $16,558.48 which represents calculated actual damages, penalties, and interest, but excludes attorneys' fees and costs. Plaintiff Munson alleges she was entitled to back wages of approximately $2,770.75. Plaintiff Munson estimates that if she had recovered in full for his claims, she would be entitled to approximately $17,179.51 which represents calculated actual damages, penalties, and interest, but excludes attorneys' fees and

Page 3

costs. A copy of Plaintiffs' damages chart, breaking down each amount sought from Defendants, is attached as "Exhibit B." The parties have agreed to settle this action for the total sum of $37,000. The settlement will be paid in a lump sum payment.

Under *Lynn's Food*, a court may approve a settlement where it "reflects a 'reasonable compromise of disputed issues [rather] than a mere waiver of statutory rights brought about by an employer's overreaching.'" *Le v. Sita Information Networking Computing USA, Inc.*, No. 07 Civ. 0086, 2008 U.S. Dist. LEXIS 46174 at *2 (E.D.N.Y. June 12, 2008) (quoting *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1354 (11th Cir. 1982)); *see also Kopera v. Home Depot U.S.A., Inc.*, No. 09 Civ. 8337, 2011 U.S. Dist. LEXIS 71816, at *2 (S.D.N.Y. June 24, 2011) ("If the proposed settlement reflects a reasonable compromise over contested issues, the settlement should be approved.").

Throughout the litigation, there were sharply contested factual and legal disputes that went to the heart of Plaintiffs' claims. Defendants were adamant that Plaintiffs worked less hours than claimed, and indicated they were willing to provide witnesses to this effect. Defendants also claimed that Plaintiffs Munson and Rivas were barred by the doctrine of res judicata resulting from a prior class action settlement in *Jara v. Felidia Restaurant, Inc.* 17-cv-09622 (S.D.N.Y.) from asserting many of their claims.

Considering the risks in this case outlined above, Plaintiffs believe that this settlement is a good result, and should be approved as fair. *See Meigel v. Flowers of the World, NYC, Inc.*, 2012 U.S. Dist. LEXIS 2359, at *2-3 (S.D.N.Y. Jan. 9, 2012) ("Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement. If the proposed settlement reflects a reasonable compromise over contested issues, the court should approve the settlement.").

### 3.   Plaintiffs' Attorneys' Fees are Fair and Reasonable

Under the settlement, and in accordance with their retainer agreement with Plaintiffs, Plaintiffs' counsel will receive $12,604.64 from the settlement fund as attorneys' fees and costs. This represents one third of the recovery in this litigation (inclusive of costs) as well as a reduction in fees from what is identified in Plaintiffs' retainer agreement, which provides that forty percent of Plaintiff Guzman's recovery will be retained by the firm plus costs.

Plaintiff's counsel's lodestar in this case is $9,300.00. A copy of Plaintiff Guzman's billing record is attached as "Exhibit C." Mr. Michael Faillace's standard billing rate is $450 an hour (MF), Mr. Daniel Tannenbaum's and Ms. Marisol Santos's standard billing rates are $350 an hour (DT and MS, respectively).

The amount provided to Plaintiff's counsel under the settlement is fair and reasonable and well within the range of fees typically awarded in cases in this Circuit. *See Pinzon v. Jony Food Corp.*, No. 18-CV-105(RA), 2018 U.S. Dist. LEXIS 87424 (S.D.N.Y. May 24, 2018) (awarding this firm a third, or 5.23 times the lodestar, in an early settlement and "recognizing the importance of encouraging the swift resolution of cases like this one and avoiding 'creat[ing] a disincentive to early settlement'—particularly where such settlement has provided Plaintiff with a substantial and

speedy result." (quoting *Hyun v. Ippudo USA Holdings et al.*, No. 14-CV-8706 (AJN), 2016 U.S. Dist. LEXIS 39115, 2016 WL 1222347, at *3 (S.D.N.Y. Mar. 24, 2016).; *Shapiro v. JPMorgan Chase & Co.*, No. 11-CV-7961 (CM), 2014 U.S. Dist. LEXIS 37872, 2014 WL 1224666, at *24 (S.D.N.Y. Mar. 21, 2014) ("Lodestar multipliers of nearly 5 have been deemed 'common' by courts in this District."); *Castaneda v. My Belly's Playlist LLC,* No. 15 Civ. 1324 (JCF) (S.D.N.Y. Aug. 17, 2015) (Francis, M.J.) (awarding the plaintiffs' attorneys a contingency fee of one-third to account for risks in litigation); *Calle v. Elite Specialty Coatings Plus, Inc.,* 2014 U.S. Dist. LEXIS 164069 at *9 (E.D.N.Y. Nov. 19, 2014) ("A one-third contingency fee is a commonly accepted fee in this Circuit."). In light of the nature of the issues herein and the extensive negotiations necessary to reach the agreed-upon settlement, Plaintiff's requested award is reasonable. *See Alleyne v. Time Moving & Storage Inc.*, 264 F.R.D. at 60; *see also McDaniel v. Cnty. of Schenectady*, 595 F.3d 411, 417 (2d Cir. 2010).

Given Plaintiffs' counsels' significant experience representing Plaintiffs in New York City in wage and hour litigation, Plaintiffs' counsel was able to obtain an excellent result with relatively low expense due to the parties' cooperative exchange of information and frequent and on-going negotiations.

A brief biography of the attorneys who performed billed work in this matter is as follows:

I am the Managing Member of Michael Faillace & Associates, P.C, and have been in practice since 1983. From 1983 to 2000, I was in-house Employment Counsel with International Business Machines Corporation (IBM). I taught employment discrimination as an Adjunct Professor at Fordham University School of Law since 1992 and at Seton Hall University Law School from 1995 to 1998, and am a nationally-renowned speaker and writer on employment law. I am also the author of the ADA, Disability Law Deskbook: The Americans with Disabilities Act in the Workplace, published by Practicing Law Institute (PLI), and other employment law publications and presentations.

Daniel Tannenbaum is an associate at Michael Faillace & Associates, P.C. He graduated Hofstra Law School in 2008, and is admitted to the New York Bar, New Jersey Bar, United States District Court, Southern District of New York and the United States District Court, Eastern District of New York. Since law school he has practiced labor and employment law and commercial litigation at a number of law firms. Since joining Michael Faillace & Associates, P.C. in March 2019, he has been responsible for a caseload involving all aspects of the firm's employment docket in federal court.

Should Your Honor have any questions or concerns regarding this settlement, the parties are happy to address them. The parties thank the Court for its attention to this matter.

Respectfully submitted,

/s/Michael Faillace
Michael Faillace, Esq.
MICHAEL FAILLACE & ASSOCIATES, P.C.
Attorneys for the Plaintiff

Page 5

Enclosures

cc:     All counsel of record via ECF